# EXHIBIT 1

Filing # 165071848 E-Filed 01/19/2023 04:05:21 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

FRANCISCO GONZALEZ and
ERIC VILLANUEVA, individually and on behalf of all others similarly situated,

COMPLEX BUSINESS DIVISION

      Plaintiffs,

CASE NO.:_____

vs.

ANDREW C. PORTER, SALVATORE, PRESCOTT, PORTER & PORTER, PLLC, EMERSON SOUSA PIRES, and FLAVIO MENDES GONCALVES,

      Defendants.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Francisco Gonzalez and Eric Villanueva (collectively, "Plaintiffs"), individually and as representatives of the already Certified Class, sue Defendants, Andrew C. Porter ("Porter"), Salvatore, Prescott, Porter & Porter, PLLC ("SPPP"), Emerson S. Pires ("Pires"), and Flavio M. Goncalves ("Goncalves") (collectively, "Defendants"), and allege as follows:

## INTRODUCTION

This case is about a lawyer (Mr. Andrew Porter) that crossed the line, from being a zealous advocate for his clients, to an active participant in a massive Ponzi scheme that stole more than $40 million dollars from the Certified Class of victims. This Court has already: (1) entered defaults against Messrs. Pires and Goncalves (who have both fled the jurisdiction to Dubai and Brail), (2) certified this class of all Ponzi victims, and (3) granted Final Approval to a Settlement between the Certified Class and Defendant Mr. Nicholas, who was sentenced to years in federal prison for his involvement in the Ponzi scheme, and whose important information directly helped uncover

the full extent of Mr. Porter's involvement, which Plaintiffs and the Certified Class are now constrained to bring to light before this Court.

This massive cryptocurrency Ponzi scheme was perpetrated by Pires and Goncalves, their companies, Empires Consulting Corp., Empires X Corp., and EmpX Management LLC (collectively, "EmpiresX"), and EmpiresX's head trader, Joshua David Nicholas ("Nicholas"). These individuals lured unsuspecting investors through false promises of "exponential" profits, expected investment returns of 1% *per day*, and the prospect of making millions of dollars "in a matter of months." Through this fraudulent scheme, these individuals stole more than $40 million by selling EmpiresX investments to thousands of unwitting investors.

When their scheme began to collapse, Pires and Goncalves fled to Brazil along with millions of investor monies. ***Before they fled***, however, they specifically retained and paid Defendant, Porter, and his law firm, SPPP, to represent Nicholas in responding to a Subpoena issued by the Securities and Exchange Commission ("SEC"), as part of its investigation of EmpiresX. Realizing that the only way to minimize his exposure to criminal charges was to cooperate, Nicholas decided to share with the SEC useful information regarding the Ponzi scheme, including information regarding accounts in which the proceeds of the illegal scheme were held, and concerning Goncalves's whereabouts. ***But Mr. Porter actively and intentionally prevented Nicholas from doing so***.

With full knowledge that Pires and Goncalves intended to flee the United States imminently, Mr. Porter advised Nicholas not to disclose their whereabouts, nor the accounts where they were hiding the millions of dollars they stole from investors. Contrary to his client's professed wishes, Mr. Porter opted instead to protect his benefactors by instructing Nicholas to invoke the

2

Fifth Amended right against self-incrimination, thereby facilitating Pires's and Goncalves's crimes. This proposed Class Action is brought on behalf of the Certified Class.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Francisco Gonzalez, is an individual resident of Miami, Florida and is *sui juris*. Plaintiff Gonzalez is a representative of the Certified Class, which is defined herein as the Class certified in the pending action *Eric Villanueva, et al. v. Empires X Corp., et al.*, No. 2022-010719-CA-01 (Fla. 11th Jud. Cir. Ct.) (the "*Villanueva* Action"), namely "All persons who, from June 10, 2018, to August 30, 2022, invested with the Empires-X investment platform. Excluded from the Settlement Class are counsel of record (and their respective law firms) for the *Villanueva* Parties; the *Villanueva* Defendants and any of their parents, affiliates, subsidiaries, and all of their respective employees, officers, and directors, successors, personal representatives, heirs and assigns; and the presiding judge in the *Villanueva* Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff."

2.      Plaintiff, Eric Villanueva, is an individual resident of Fort Lauderdale, Florida and is *sui juris.* Plaintiff Villanueva is a representative of the Certified Class, which is defined herein as the Class certified in the pending *Villanueva* Action, namely "All persons who, from June 10, 2018, to August 30, 2022, invested with the Empires-X investment platform. Excluded from the Settlement Class are counsel of record (and their respective law firms) for the *Villanueva* Parties; the *Villanueva* Defendants and any of their parents, affiliates, subsidiaries, and all of their respective employees, officers, and directors, successors, personal representatives, heirs and assigns; and the presiding judge in the *Villanueva* Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff."

3.     Defendant, Andrew Porter, is an individual resident of Chicago, Illinois who provided legal services to Joshua Nicholas in Florida.

4.     Defendant, Salvatore, Prescott, Porter & Porter, PLLC, is an Illinois professional limited liability company which provided legal services to Joshua Nicholas in Florida.

5.     Defendant, Emerson S. Pires, is an individual resident of the City of Fort Myers, located within Lee County, Florida. Upon information and belief, Pires recently fled to Brazil, where he is a citizen, and is concealing his whereabouts. Pires is the founder and President of Empires X Corp., a Florida corporation which at all times relevant to this action did business in Florida, and the President of Empires Consulting Corp., a Florida corporation which at all times relevant to this action did business in Florida, and EmpX Management LLC, a Florida limited liability company which at all times relevant to this action did business in Florida. Accordingly, Pires accepted the privilege extended by law to nonresidents and others to, and did, in fact, operate, conduct, engage in, or carry on a business or business venture in the state, or had an office or agency in the state.

6.     Defendant, Flavio M. Goncalves, is an individual resident of the City of Fort Myers, located within Lee County, Florida. Upon information and belief, Goncalves recently fled to Dubai, where he may also be a citizen. Goncalves is the co-founder of Empires X Corp, a Florida corporation which at all times relevant to this action did business in Florida, and the Vice-President of Empires Consulting Corp., a Florida corporation which at all times relevant to this action did business in Florida, and of EmpX Management LLC, a Florida limited liability company which at all times relevant to this action did business in Florida. Accordingly, Goncalves accepted the privilege extended by law to nonresidents and others to, and did, in fact, operate, conduct, engage in, or carry on a business or business venture in the state, or had an office or agency in the state.

4

7.     This Court has jurisdiction over this matter because this is a putative class action for damages of more than $30,000, exclusive of interest, costs, and attorney's fees, and is within the exclusive plenary jurisdiction of the Circuit Courts.

8.     Venue is proper in Miami-Dade County because this is where a substantial part of the events and/or omissions giving rise to the Plaintiffs' claims occurred and where Plaintiffs (and other affected individuals) are situated. Further, this is the venue where the related primary *Villanueva* Action is pending in the Complex Business Litigation Division.

9.     Assignment to the Complex Business Litigation Division is proper because the amount in controversy exceeds $1 million, involves complex issues, and involves a proposed class action. Further, the related primary *Villanueva* Action is already pending in the Complex Business Litigation Division of this Court.

## FACTUAL BACKGROUND

10.     In or about 2020, Pires and Goncalves founded EmpiresX and based the company in South Florida. Pires and Goncalves controlled EmpiresX, including its operations, the content of representations made to investors, and how EmpiresX used investor funds.

11.     Pires touted himself as "an experienced market analyst and advisor" who had "years of business, traditional markets and cryptocurrency portfolio management." Goncalves represented that he had various degrees, owned multiple companies, and was part of ongoing research projects, including one that focused on ending Alzheimer's disease. These claims were all false.

12.     Contemporaneously with their founding of EmpiresX, Pires and Goncalves launched a web-based platform (the "EmpiresX Platform") that was targeted to South Florida consumers (mostly Spanish speakers) as an investment opportunity for trading in cryptocurrency.

5

Pires and Goncalves marketed the EmpiresX Platform as an "opportunity to participate in the best experience of investing in a safe and efficient platform."

13.     To imbue EmpiresX with legitimacy, Pires and Goncalves falsely represented to investors that the transactions on the EmpiresX Platform were regulated not only by the SEC, but also by the Commodity Futures Trading Commission (the "CFTC"), the Federal Reserve, and other regulatory organizations like the Financial Industry Regulatory Authority ("FINRA"). But the investments EmpiresX offered were not registered with any of these institutions. In fact, the investments were a complete fraud.

14.     Through the EmpiresX Platform, Pires and Goncalves urged potential investors that "this was the time to invest" because EmpiresX was at its moment of peak growth. They conveyed falsely to users that EmpiresX was conducting business worldwide – in five continents and over 50 countries with offices in the United States, Latin America, and even Dubai.

15.     According to Pires and Goncalves, EmpiresX was not only extremely profitable, but also was having an unspecified "monthly growth" of 30% and expectations of **6000% total growth by** 2023.[1] Pires told potential investors: "In three months when you join this company, you have pretty much the chance to double your money."[2] All these representations were false.

16.     Pires and Goncalves lured investors by offering and selling two different investment options that each would purportedly generate a one percent (1%) daily return.

### The First Option: The Fake Trading Bot

17.     The first option, and the cornerstone of the EmpiresX Platform, was a trading bot, called "Ex Bot" or "Bin Bot," which, potential investors were told, was a proprietary algorithm

---

[1] https://empiresx.org/about/company/

[2] https://behindmlm.com/companies/empiresx-an-incompetent-mess-new-withdrawal-restrictions/

that utilized artificial intelligence to conduct day trading activities which guaranteed that investors would generate a 1% return on their investment ("ROI") daily.

18.     To use the trading bot, investors had to pay annual licensing fees ranging from $200 to $400, invest a minimum of $500, and deposit more money to fund a separate "credit balance" account from which EmpiresX deducted a fee that amounted to 20% of the investor's daily profit. Investors had the option to make the payments either in USDT (USD Tether), BTC (Bitcoin), or ETH (Ether).[3] Payments from investors went directly to EmpiresX's designated crypto wallets, which Pires and Goncalves controlled.

19.     Unbeknownst to unsuspecting investors, the "Bot" was a huge scam. There never was an algorithm using artificial intelligence to conduct trades on behalf of EmpiresX investors. In fact, no trading activity ever actually occurred for the benefit of the EmpiresX investors.

20.     Instead, the Bot was just a scheme to accumulate as many deposits from investors as possible into EmpiresX's crypto wallet, which Pires and Goncalves used either to pay older investors to keep the scheme going, or to pay themselves exorbitant amounts of money to fund their own lavish lifestyles at the expense of, in many cases, the investors whose life savings they were exploiting.

### The Second Option: The Fraudulent Investment Program

21.     The second investment option was "private" investments that involved the pooling of investor funds in EmpiresX's brokerage accounts, which Nicholas would use to manually trade stock, options, and futures. Pires and Goncalves represented to investors that these private investments would generate a guaranteed daily return of 1%.

---

[3] *Id.*

22.     Central to this option was Nicholas, who often was referred to in EmpiresX's marketing materials as the "Master Trader" of EmpiresX. Pires and Goncalves represented to investors that Nicholas was the "brains" behind the creation of the Bot, which Nicholas had purportedly created using his vast knowledge and experience gained while working for Goldman Sachs in New York.

23.     Like their representations about the trading Bot, the representations about the private investments' performance were complete lies. Nicholas never worked for Goldman Sachs. Undisclosed to investors was the fact that Nicholas had a significant disciplinary history, including his suspension from membership in the National Futures Association for allegedly misappropriating client funds to fund a personal trading account.

24.     In fact, whatever little trading Nicholas actually performed did not generate a daily 1% ROI, but instead resulted in huge losses.

### The Fraudulent Referral Program

25.     To bring in more investors and supercharge the Ponzi scheme, EmpiresX touted a multi-level plan to sell its investment products and provided incentives, including commissions and prizes, as a means of encouraging current investors to find new investors.

26.     Investors in both the bot and the private investment programs received a 5% commission of the initial investment amount for anyone they persuaded to invest in EmpiresX. EmpiresX also offered prizes to all investors whose downstream "network" sold between $16,000 and $80 million in investments, including electronics, travel vouchers, a Rolex watch, and various luxury vehicles. The more money investors brought in, the more lavish were the prizes Defendants offered.

**Conversion of Investor Funds**

27.     Between November 2020 and December 2021, EmpiresX received at least $40 million in investor funds through their fraudulent scheme.

28.     Despite Defendants' representations that investors' money would be used for trading, Pires and Goncalves misappropriated nearly all those funds.

29.     For example, Pires diverted investor funds for personal expenditures including the following: $300,000 in travel expenses, $250,000 in home renovations, $125,000 for a down payment on another home, $70,000 for the lease down payment for a Lamborghini Urus, $47,000 in apparel, $33,000 in meals and groceries, $19,000 in mortgage payments, and $15,000 in home décor. Pires also paid nearly $358,000 to another company he manages, and transferred over $250,000 to himself, relatives, and associates.

30.     For his part, Goncalves received at least $421,000 of investor funds, and his relatives received at least an additional $99,000. Goncalves used the investor money for personal uses including the following: $69,000 at luxury hotels, $43,285 in lease payments for a Ferrari 488 GTB, $7,000 to Jaguar Land Rover, $3,000 to Tiffany & Co., and on other personal expenditures, including grocery shopping and a gym membership.

31.     Additionally, between May 2021 and April 2022, Nicholas received at least $289,000 of investor funds, which he likewise spent on personal uses.

**The Ponzi Scheme Unravels**

32.     By approximately November 2021, EmpiresX stopped honoring investor withdrawals, providing investors with the fake excuse that it had to process withdrawals manually rather than automatically due to technical difficulties at its crypto trading firm.

33.     Then, in January 2022, blaming unspecified "deleterious acts" and unidentified "stakeholders [who] have violated standards and acted in ways that purport to harm the company," EmpiresX stated in a written announcement to investors that it would repay all investor funds and dissolve by the end of February 2022. This promise of repayment was false.

34.     Indeed, despite requests from thousands of Class Members, EmpiresX has failed to honor any withdrawal requests or otherwise repay its defrauded investors, harming thousands, if not millions of people nationwide and internationally, many of which have lost their life savings.

**The SEC Subpoenas**

35.     When their scheme began to collapse, Pires and Goncalves began winding down EmpiresX in preparation to flee to their home country of Brazil with millions of dollars of investor funds.

36.     Before they fled, however, they retained and paid Defendants Porter and SPPP to represent Nicholas in responding to a subpoena the Securities and Exchange Commission issued to Nicholas as part of its investigation of EmpiresX. *See* **Exhibit A**: Affidavit of Joshua Nicholas, at ¶ 4.

37.     Realizing that the only way to minimize his exposure to criminal charges was to cooperate, Nicholas decided to share with the SEC useful information regarding the Ponzi scheme, including information regarding accounts in which the proceeds of the illegal scheme were held, and concerning Goncalves's whereabouts. But Mr. Porter prevented Nicholas from doing so. *Id*. at ¶ 6.

38.     With full knowledge that Pires and Goncalves intended to flee the United States imminently, Mr. Porter advised Nicholas not to disclose their whereabouts or the accounts where they were hiding the millions of dollars they stole from investors. Contrary to his client's wishes

and desires, Mr. Porter opted instead to protect his benefactors by instructing Nicholas to invoke the Fifth Amended right against self-incrimination, thereby affirmatively assisting, helping to conceal, and otherwise facilitating Pires's and Goncalves's crimes. *Id*. at ¶¶ 7–9.

39.     Thus, on April 8, 2022, Mr. Porter emailed Nicholas a Declaration of Fifth Amendment rights to sign and send to the SEC. Thereafter, on or about April 19, 2022, Mr. Porter represented Nicholas in an interview with the Commodity Futures Trading Commission in which – under the advice of counsel – Nicholas asserted his Fifth Amendment right concerning nearly every question asked. *Id*. at ¶¶ 10–12.

40.     On information and belief, Goncalves and Pires thereafter relocated to Brazil, where they are both citizens, with millions of investor monies.

41.     By advising Nicholas against his wishes to invoke his Fifth Amendment right against self-incrimination, Defendants did not simply provide Nicholas with legal services, but were instrumental to the success of Goncalves's and Pires's crimes and directly contributed to the plaintiff's class's damages by enabling Goncalves and Pires to flee with millions of investor funds. Without Defendants' assistance, Goncalves and Pires likely would have been apprehended in the United States, and millions of investor funds likely would have been recovered.

**Plaintiffs' Investments**

42.     Plaintiff, Eric Villanueva, joined EmpiresX in August 2021 through an EmpiresX recruiter. His initial investment was in the amount of $9,500; he made additional contributions through April 2022 totaling $25,000. He has not received any payments relating to his investment from EmpiresX.

43.     Plaintiff, Francisco Gonzalez, joined EmpiresX in October 2021 through an EmpiresX recruiter. His initial investment was in the amount of $ 4,200 and made no additional contributions. He has not received any payments relating to his investment from EmpiresX.

44.     On June 10, 2022, Plaintiffs filed the *Villanueva* Action in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, on behalf of themselves and the class of all persons who, within the applicable limitations period, invested in the EmpiresX investment platform.

45.     On August 30, 2022, the presiding judge in the class action lawsuit, the Honorable Alan Fine, entered an order certifying a settlement class and approving a settlement between Plaintiffs, as Class Representatives, and Nicholas. The Court finally approved that class action settlement at the Final Fairness Hearing on October 27, 2022, as embodied in a Final Order and Judgment dated December 26, 2022. A true and correct copy of the Court's Final Order and Judgment is attached hereto as **Exhibit B**. Pursuant to the settlement agreement, Nicholas agreed, among other things, to assign to Plaintiffs all claims and rights he has against Porter.

46.     On December 7, 2022, Judge Fine entered defaults against Pires and Goncalves on all claims asserted against them for failing to serve any papers as required by law or otherwise defend pursuant to Fla. R. Civ. P. 1.500(b). True and correct copies of the defaults against Pires and Goncalves are attached hereto as **Exhibits C** and **D**, respectively. Those defaulted claims include Plaintiffs' claims for breach of fiduciary duties and conversion of investor monies.

## CLASS ALLEGATIONS

47.     Plaintiffs bring their claims on behalf of themselves and the Certified Class, as certified in the *Villanueva* Action. Plaintiffs submit no further action is necessary for this action to proceed on behalf of the Certified Class.

48.     To the extent it may be deemed necessary to do so, the Court should still allow these claims to proceed against these Defendants on behalf of the following Class:

> **All persons who, within the applicable limitations period, invested in the Empires-X investment platform.**
>
> **Excluded from the Class are counsel of record (and their respective law firms) for the Parties; Defendants and any of their parents, affiliates, subsidiaries, and all of their respective employees, officers, and directors, successors, personal representatives, heirs and assigns; Empires-X and any of their parents, affiliates, subsidiaries, and all of their respective employees, officers, and directors, successors, personal representatives, heirs and assigns; Pires, Goncalves, and Nicholas, and any of their successors, personal representatives, heirs and assigns; and the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff.**

49.     Certification of the Class is appropriate and warranted under Florida Rule of Civil Procedure 1.220.

50.     **Numerosity**: The members of the Class are so numerous that separate joinder of each member is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are at least thousands of putative Class members. The exact number will be discovered through discovery. In fact, Undersigned Counsel currently represents over 165 EMPIRES-X users, who collectively lost millions of dollars into the EMPIRES-X PLATFORM alone.

51.     **Commonality**: Plaintiffs' contentions raise predominately questions of law or fact common to each member of the Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant, Andrew Porter, and his law firm, Salvatore, Prescott, Porter & Porter, PLLC aided and abetted conversion;

b. Whether Defendant, Andrew Porter, and his law firm, Salvatore, Prescott, Porter & Porter, PLLC aided and abetted civil theft of investor funds;

c. Whether Defendant, Andrew Porter, and his law firm, Salvatore, Prescott, Porter & Porter, PLLC engaged in a conspiracy with Defendants Pires and Goncalves;

d. Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

e. Whether Plaintiffs and Class members are entitled to consequential damages, punitive damages, statutory damages, disgorgement, and/or other legal or equitable appropriate remedies because of Defendants' conduct.

52. **Typicality**: Plaintiffs' claims are typical of the claim of each member of the Class, because, *inter alia*, all Class members were injured through the misconduct alleged herein. Plaintiffs are advancing the same claim and legal theories on behalf of themselves and all members of the Class.

53. **Adequacy of Representation**: Plaintiffs will fairly and adequately protect and represent the interests of each member of the Class. Plaintiffs are willing and prepared to serve the Court and the Class in a representative capacity with all the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class. Indeed, Plaintiffs and their Counsel have already been appointed Class Representatives and Class Counsel over this same proposed Class in *Eric Villanueva, et al. v.*

14

*Empires X Corp., et al.*, No. 2022-010719-CA-01 (Fla. 11th Jud. Cir. Ct.), which is also pending before this Court and was brought by these same Plaintiffs and their counsel.

54.     In addition, Plaintiffs satisfy the requisites of rule 1.220(b) by fulfilling rule 1.220(b)(3), since the questions of law or fact common to the claim of each member of the Class predominate over any question of law or fact affecting only individual members of the Class.

55.     Finally, class representation is superior to other available methods for the fair and efficient adjudication of the controversy. In particular,

a.     there is little economic incentive or other interest of Class members to individually prosecute separate claims,

b.     Other than *Eric Villanueva, et al. v. Empires X Corp., et al.*, No. 2022-010719-CA-01 (Fla. 11th Jud. Cir. Ct.), Plaintiffs are unaware of any other pending litigation to which any member of the Class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated,

c.     no difficulties are likely to be encountered in the management of the claim or defense on behalf of the Class.

56.     Judicial determination of the common legal and factual issues essential to this case would thus be far more efficient and economical as a class action than in piecemeal individual determinations.

### <u>COUNT I – AIDING AND ABETTING CONVERSION</u>

**(against Porter and SPPP)**

57.     Plaintiffs reallege paragraphs 1 through 56 above as if fully set forth herein.

58.     Pires and Goncalves converted funds and assets belonging to the Plaintiffs and the Class Members. *See, e.g.,* Exs. B–D.

59.      Defendants Porter and SPPP knew that Pires and Goncalves converted funds and assets belonging to the Plaintiffs and the Class Members because Nicholas expressly told Mr. Porter that they had done so. *See* Ex. A.

60.      Defendants Porter and SPPP substantially assisted Pires and Goncalves in converting assets by advising Nicholas not to disclose to the SEC, CFTC, and other authorities their whereabouts or the accounts where they were hiding the millions of dollars they converted from investors, and by instructing Nicholas to invoke the Fifth Amended right against self-incrimination, thereby facilitating Pires's and Goncalves's crimes. *Id.*

61.      As a direct, proximate, and foreseeable result of Defendants' actions, Plaintiffs and the Class Members have suffered significant damages.

## <u>COUNT II – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY</u>

### (against Porter and SPPP)

62.      Plaintiffs reallege paragraphs 1 through 56 above as if fully set forth herein.

63.      Pires and Goncalves breached fiduciary duties they owed to Plaintiffs and the Class Members. *See, e.g.,* Exs. B–D.

64.      Defendants Porter and SPPP knew that Pires and Goncalves breached their fiduciary duties owed to Plaintiffs and the Class members because Nicholas expressly told Mr. Porter that Pires and Goncalves had stolen funds and assets belonging to the Plaintiffs and the Class Members. *See* Ex. A.

65.      Defendants Porter and SPPP substantially assisted Pires and Goncalves in breaching their fiduciary duties by advising Nicholas not to disclose to the SEC, CFTC, and other authorities their whereabouts or the accounts where they were hiding the millions of dollars they

converted from investors, and by instructing Nicholas to invoke the Fifth Amended right against self-incrimination, thereby facilitating Pires's and Goncalves's crimes. *Id.*

66.    As a direct, proximate, and foreseeable result of Defendants' actions, Plaintiffs and the Class Members have suffered significant damages.

<u>**COUNT III – CIVIL CONSPIRACY**</u>

**(against all Defendants)**

67.    Plaintiffs reallege paragraphs 1 through 56 above as if fully set forth herein.

68.    The Defendants entered into one or more agreements with each other with the purpose of facilitating the EmpiresX Ponzi Scheme, as well as Defendant Pires' and Goncalves' unlawful acts of conversion, civil theft, breaches of fiduciary duties, and/or the maintenance of a Ponzi Scheme to Plaintiffs and the Class of EmprisX investors.

69.    Defendants engaged in unlawful acts in respect to the EmpiresX Ponzi scheme, namely, Defendant Pires' and Goncalves' unlawful acts of conversion, civil theft, breaches of fiduciary duties, and/or the maintenance of a Ponzi Scheme to Plaintiffs and the Class of EmpiresX investors.

70.    Defendants' Porter's and SPPP's participation in the conspiracy substantially assisted or encouraged the wrongdoing conducted Pires, Goncalves, and EmpiresX; further, Defendants Porter and SPPP had knowledge of such fraud and/or wrongdoing, because of their experience and relationship with Defendants Pires, Goncalves, and EmpiresX, as described above and as such, knew that EmpiresX was a Ponzi scheme and knew that the acts taken to prevent Nicholas from sharing with the SEC useful information regarding the Ponzi scheme, including information regarding accounts in which the proceeds of the illegal scheme were held, and concerning Goncalves's whereabouts, would aid in furtherance of that wrongdoing.

71.     Defendants' conspiracy with the Pires, Goncalves, and EmpiresX to commit conversion, civil theft, breaches of fiduciary duties, and/or the maintenance of a Ponzi Scheme caused damages to Plaintiffs in the amount of their lost investments.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, the Certified Class, and all others similarly situated, demand judgment against the Defendants as follows:

(1)     Declaring this action to be a proper class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure and certifying the Classes sought herein;

(2)     Declaring Plaintiffs and their counsel representatives of the Class;

(3)     Awarding damages sustained by Plaintiff and the Class Members because of Defendant's misconduct (as specified hereinabove), together with appropriate prejudgment interest at the maximum rate allowable by law;

(4)     Awarding Plaintiff and the Class Members costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class Members' counsel and experts, and reimbursement of expenses, pursuant to the common fund doctrine;

(5)     Awarding such other and further relief the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class request a jury trial for all Counts for which a jury trial is permitted.

Dated: January 19, 2023

Respectfully submitted,

By: /s/ *David A. Nuñez*
David A. Nuñez
Florida Bar No. 646776
david@nunez-law.com
**Meyer & Nuñez, P.A.**
135 San Lorenzo Ave.
Suite 620
Coral Gables, FL 33146
Telephone: 305-722-9898
Fax: 305-567-9356

*Attorneys for the Certified Class*

By: /s/ *Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
Barbara C. Lewis
Florida Bar No. 118114
barbara@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

*Attorneys for the Certified Class*

By: s/ *Jose M. Ferrer*
Jose M. Ferrer
Florida Bar No. 173746
jose@markmigdal.com
eservice@markmigdal.com
**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

*Attorneys for the Certified Class*

# Exhibit A

## AFFIDAVIT OF JOSHUA DAVID NICHOLAS

STATE OF FLORIDA        )
                                 )ss:

COUNTY OF MIAMI-DADE    )

BEFORE ME, the undersigned authority, personally appeared JOSHUA DAVID NICHOLAS, who first being duly sworn, deposes and states as follows:

1.       My name is Joshua David Nicholas. I am the Affiant herein, I am over the age of 18, and fully competent to make this affidavit. The facts stated herein are true and correct and are based on my personal knowledge.

2.       On January 21, 2022, I was served with a subpoena from the Securities and Exchange Commission regarding an investigation into "Mining Capital Coin." There were many questions in that subpoena regarding EmpiresX. I began compiling all the information I could, realizing that the only way to minimize my exposure to criminal charges was to cooperate.

3.       The next day, I communicated with Emerson Pires and Flavio Goncalves about the subpoena, and shared with them the draft response I was working on and all the information regarding EmpiresX that I was planning on sharing with the SEC in response to the subpoena with the goal of getting money back to the victims of EmpiresX.

4.       On January 24, 2022, Emerson and Flavio retained and paid Andrew Porter and his law firm, Salvatore, Prescott, Porter & Porter, PLLC, through their EmpiresX entity to represent me in responding to the subpoena.

5.       I learned that Mr. Porter was coordinating with personal counsel for Flavio and Emerson, attorneys Michael Maione and Theodore Poulos of the law firm Costirilos, Tighe, Streicker, Poulous & Campbell, Ltd.

6.       I discussed with Mr. Porter that I had decided to share with the SEC useful information regarding EmpiresX, including information regarding accounts in which the proceeds of EmpiresX were held, and concerning Goncalves's and Pires's whereabouts and that they had told me they were planning to flee the United States back to their home country of Brazil. But Mr. Porter prevented me from doing so which undoubtedly facilitated their escape.

7.       Despite knowing that Emerson and Flavio intended to flee the United States imminently, Mr. Porter advised me not to disclose anything about them or about EmpiresX. Contrary to my wishes and desires, Mr. Porter opted instead to protect Emerson, Flavio, and

EmpiresX (who were paying him) by instructing me to invoke the Fifth Amendment right against self-incrimination. While Mr. Porter told me this was my only option and in my best interest, I now understand he was merely facilitating Emerson's and Flavio's crimes to allow them to run off with the victims' funds.

8.      On March 16, 2022, I was in California with Flavio and his son at an Airbnb located at 4201 Cleveland Ave, San Diego, CA 92103. While there, I sent Mr. Porter the following email at his email address, aporter@sppplaw.com:

| From: | Josh Nicholas <joshuadnicholas@gmail.com> |
|---|---|
| Sent: | Wednesday, March 16, 2022 1:08 PM |
| To: | Andrew Porter |
| Subject: | FYI |
| Attachments: | Real EmpiresX Bullshit - Privilidged Attorney Communication.xlsx |

So after downloading the information and what not I came to the conclusion that even with all the data because wallet ID changes every time (confirmed trying to trace my own back) and was unable to do so.

I also found out that I think Flavio is staying in the USA. (Please do not say anything to the other attorneys about that). I know that Flavio and Emerson were refusing to come to the USA to avoid being served by CFTC so I'm not sure if that would be of any use. I believe Flavio is going back to South America on Saturday or sunday. So lmk what your sense/thoughts are on that.

/Josh

9.      My hope was that Mr. Porter could get back to me and that I could communicate through him to law enforcement to apprehend Flavio, but Andrew never got back to me. Flavio tried to convince me to go with him across the border into Mexico, where I now believe that he intended to take my life. I told Flavio I had meetings in Florida and could not risk missing my flight home, and left back to the airport. Flavio thereafter fled the country, on information and belief to Florianopolis, Brazil, along with Emerson and with millions in EmpiresX investor funds.

10.     Then, on April 8, 2022, Mr. Porter emailed me a Declaration of Fifth Amendment rights to sign and send to the SEC. Thereafter, on April 19, 2022, Mr. Porter represented me in an interview with the Commodity Futures Trading Commission in which – under his advice as my counsel – I asserted my Fifth Amendment right concerning nearly every question asked.

11.     After taking the 5th I was very upset because I believed that was wrong and obstructive. On April 27, 2022, I emailed Mr. Porter, saying "It's well past time we start reaching out to the SEC & CFTC and start letting them know this." The "this" I was referencing was related to the data I was compiling from EtherScan and that I wanted to supply the SEC, CFTC, and government all that I had.

*On or around April 20, 2022 I emailed the CFTC directly apologizing for wasting their time by invoking the 5th amendment during an interview. Because I was represented by counsel they were unable to take me up on my offer to provide truthful and complete answers to their questions concerning EmpiresX & Flavio Goncalves and Emerson Pires. (CON'T)*

Page 2 of 3

*Con't)* So I contacted Andrew Porter to schedule a meeting with the CFTC but he told me "~~you~~ We are not doing that". *JN.*

12.     A few days later in early June 2022, I again spoke with Mr. Porter about cooperating with the government. He told me that it was too late to do so. I was arrested on July 1, 2022.

FURTHER AFFIANT SAYETH NAUGHT.

*Joshua David Nicholas*
JOSHUA DAVID NICHOLAS

STATE OF FLORIDA          )
                                       ) ss:
COUNTY OF MIAMI-DADE  )

The foregoing instrument was acknowledged before me this 21st day of December, 2022, by JOSHUA DAVID NICHOLAS, who is personally known to me or who produced FDC INMATE I.D. REG # 08943.5LD as identification, and who did take an oath.

(SEAL)

_____
NOTARY PUBLIC, STATE OF FLORIDA

_____
Type or Print Name

My Commission Expires:

# Exhibit B

Filing # 163648785 E-Filed 12/26/2022 05:11:29 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-010719-CA-01
SECTION: CA44
JUDGE: Alan Fine

**ERIC VILLANUEVA et al**

Plaintiff(s)

vs.

**EMPIRES X CORP et al**

Defendant(s)

_____/

## FINAL ORDER AND JUDGMENT

On August 30, 2022, this Court granted preliminary approval of the proposed class action settlement set forth in the Settlement Agreement and Release (Settlement Agreement")[1] between Plaintiffs, Eric Villanueva and Francisco Gonzalez, and Defendant, Joshua Nicholas. The Court also provisionally certified the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a final approval hearing that is scheduled for October 27, 2022.

On October 27, 2022, the Court held a duly noticed final approval hearing to consider (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate; and (2) whether a judgment should be entered permanently barring the Parties and Settlement Class Members from prosecuting any and all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Settlement Class Members ever had, now have, may have, or

hereafter can, shall or may ever have against Defendant.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Final Order and Judgment, and for any other necessary purpose.

2. The Court finds that Class Notice was given in the manner ordered by the Court; constituted the best practicable notice to apprise Settlement Class Members of the Settlement, their right to object to the proposed Settlement, and their right to appear at the Final Approval Hearing; was fair, reasonable, and adequate and constituted sufficient notice to all persons entitled to receive notice, including all Settlement Class Members; and complied fully with the requirements of Florida Rule of Civil Procedure 1.220.

3. The Court finds that the Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of the Action and of the strengths and weaknesses of their respective positions. Further, settlement occurred only after the Parties negotiated extensively. Counsel for the Parties were therefore well positioned to evaluate the benefits of the Settlement Agreement, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

4. The Court finds that the prerequisites for a class action under Florida Rule of Civil Procedure 1.220(a) and Florida Rule of Civil Procedure 1.220(b) have been satisfied for settlement

purposes for each Settlement Class Member in that (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Class Representatives are typical of the claims of the Settlement Class they seek to represent; (d) Class Representatives have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; and (e) the settling Defendant, Joshua Nicholas, has acted or refused to act on grounds generally applicable to all class members, thereby making final injunctive relief or declaratory relief concerning the class appropriate.

5. The Settlement Agreement is finally approved as fair, reasonable, and adequate pursuant to Florida Rule of Civil Procedure 1.220(e). The terms and provisions of the Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members.

<u>**The Settlement Class**</u>

6. All persons who, within the Class Period, invested with Empires-X investment platform (the "Settlement Class Members").

7. Excluded from the Settlement Class are counsel of record (and their respective law firms) for the Parties; Defendant and his successors, personal representatives, heirs and assigns, Nonsettling Defendants and any of their parents, affiliates, subsidiaries, and all of their respective employees, officers, and directors, successors, personal representatives, heirs and assigns; and the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff.

8. The Class Period is defined as the time period starting June 10, 2018, and continuing until the

date of Preliminary Approval, August 30, 2022.

**Class Counsel and Class Representatives**

9.  The Court hereby appoints The Moskowitz Law Firm PLLC and Meyer & Nuñez, P.A. as Settlement Class Counsel. Furthermore, the Court appoints Plaintiffs Eric Villanueva and Francisco Gonzalez (collectively, the "Plaintiffs") as Class Representatives.

10. The Court finds that investigating, prosecuting, and settling the claims here demanded considerable time and labor from Settlement Class Counsel, which will continue even after final approval; that Settlement Class Counsel's legal work, which has been of high quality, has conferred a significant benefit on the Settlement Class in the face of daunting litigation obstacles; that the claims against Defendants entailed considerable risk to Settlement Class Counsel, including the possibility of no recovery although the demands necessary to work on this case were high and were to the exclusion of the opportunity to work on other matters; that Settlement Class Counsel assumed substantial risk to pursue the action on a pure contingency basis; and notwithstanding the foregoing, Class Counsel have achieved an excellent result.

**The Settlement Agreement**

11. The terms of the Settlement Agreement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits maintained by the Plaintiffs and all other Settlement Class Members, as well as their heirs, executors and administrators, successors, and assigns.

12. The Release, which is set forth in Section V of the Settlement Agreement, is expressly incorporated herein in all respects and is effective as of the date of this Final Order and Judgment; and the Discharged Parties (as that term is defined in the Settlement Agreement) are forever released, relinquished, and discharged by the releasing persons from all released

claims.

13. This Final Order and Judgment and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by any released person to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14. Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

**Plaintiffs' Claims Are Dismissed and the Court Retains**

**Jurisdiction to Enforce the Settlement Agreement**

15. The claims against Defendant Joshua Nicholas filed in this Action, including all individual claims and class claims presented herein, are hereby **DISMISSED** on the merits and **WITH PREJUDICE** against the Plaintiffs and all other Settlement Class Members, without fees or costs to any party except as otherwise provided herein.

16. The Court retains jurisdiction over this matter for the purpose of enforcing the provisions of the Settlement Agreement and for the purpose enforcing the Agreement in the event of default by the Defendant.

---

[1] Unless otherwise defined, capitalized terms in this Final Order and Judgment have the definitions found in the Settlement Agreement and Release.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>26th day of December, 2022</u>.

2022-~~*Alan Fine*~~2 4:59 PM

<u>2022-010719-CA-01 12-26-2022 4:59 PM</u>
Hon. Alan Fine

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Adam Moskowitz, adam@moskowitz-law.com
Adam Moskowitz, dione@moskowitz-law.com
Adam Moskowitz, service@moskowitz-law.com
Barbara C. Lewis, barbara@moskowitz-law.com
Barbara C. Lewis, dione@moskowitz-law.com
Barbara C. Lewis, service@moskowitz-law.com
Darci Cohen, darci@markmigdal.com
Darci Cohen, eservice@markmigdal.com
Darci Cohen, darci@markmigdal.com
David Anthony Nunez, david@nunez-law.com
David Anthony Nunez, secretary@nunez-law.com
Herman J Russomanno, hrussomanno@russomanno.com
Herman J Russomanno, gpalazzotto@russomanno.com
Herman J Russomanno III, herman2@russomanno.com
Howard M Bushman, howard@moskowitz-law.com
Howard M Bushman, dione@moskowitz-law.com
JOSE M FERRER, jose@markmigdal.com
JOSE M FERRER, eservice@markmigdal.com
John (Jack) Scarola, jsx@searcylaw.com
John (Jack) Scarola, mmccann@searcylaw.com
John Scarola, _scarolateam@searcylaw.com
John Scarola, mmccann@searcylaw.com
John Scarola, _scarolateam@searcylaw.com
Joseph Martin Kaye Esq., joseph@moskowitz-law.com
Joseph Martin Kaye Esq., rejane@moskowitz-law.com
Joseph Martin Kaye Esq., dione@moskowitz-law.com
Lorenz Michel Pruss, lpruss@dkrpa.com

Lorenz Michel Pruss, mlopez@dkrpa.com
Lorenz Michel Pruss, veronica@dkrpa.com
Noozyara Binta Jahir Eshaba, neshaba@dkrpa.com
Noozyara Binta Jahir Eshaba, mlopez@dkrpa.com
Robert John Borrello, rborrello@russomanno.com
Robert John Borrello, gpalazzotto@russomanno.com
Tracy White, tracy@granerlaw.com
Tracy White, ivy@granerlaw.com
Tracy White, kristin@granerlaw.com


**Physically Served:**

# Exhibit C

Filing # 162580610 E-Filed 12/07/2022 02:43:18 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2022-010719-CA-01</u>
SECTION: <u>CA44</u>
JUDGE: <u>Alan Fine</u>

**ERIC VILLANUEVA et al**

Plaintiff(s)

vs.

**EMPIRES X CORP et al**

Defendant(s)

_____/

<u>**ORDER ON PLAINTIFFS' MOTION FOR COURT'S DEFAULT**</u>

THIS CAUSE came before the Court on December 7, 2022 upon Plaintiffs' Motion for Court's Default Against Defendant, Emerson S. Pires (the "Motion"). Having reviewed the Motion, the case file and the pleadings, and otherwise being fully advised in the premises, it is hereby ORDERED that:

1. The Motion is GRANTED.

2. A Court's default is entered in this action against Defendant, Emerson S. Pires, for his failure to serve any papers as required by law or otherwise defend pursuant to Fla. R. Civ. P. 1.500(b).

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>7th day of December, 2022</u>.

<u>2022-010719-CA-01 12-07-2022 2:28 PM</u>
Hon. Alan Fine

**CIRCUIT COURT JUDGE**
Electronically Signed

> No Further Judicial Action Required on **THIS MOTION**
>
> CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Adam Moskowitz, adam@moskowitz-law.com
Adam Moskowitz, dione@moskowitz-law.com
Adam Moskowitz, service@moskowitz-law.com
Barbara C. Lewis, barbara@moskowitz-law.com
Barbara C. Lewis, dione@moskowitz-law.com
Barbara C. Lewis, service@moskowitz-law.com
Darci Cohen, darci@markmigdal.com
Darci Cohen, eservice@markmigdal.com
Darci Cohen, darci@markmigdal.com
David Anthony Nunez, david@nunez-law.com
David Anthony Nunez, secretary@nunez-law.com
Herman J Russomanno, hrussomanno@russomanno.com
Herman J Russomanno, gpalazzotto@russomanno.com
Herman J Russomanno III, herman2@russomanno.com
Howard M Bushman, howard@moskowitz-law.com
Howard M Bushman, dione@moskowitz-law.com
JOSE M FERRER, jose@markmigdal.com
JOSE M FERRER, eservice@markmigdal.com
John (Jack) Scarola, jsx@searcylaw.com
John (Jack) Scarola, mmccann@searcylaw.com
John Scarola, _scarolateam@searcylaw.com
John Scarola, mmccann@searcylaw.com
John Scarola, _scarolateam@searcylaw.com
Joseph Martin Kaye Esq., joseph@moskowitz-law.com
Joseph Martin Kaye Esq., rejane@moskowitz-law.com
Joseph Martin Kaye Esq., dione@moskowitz-law.com
Lorenz Michel Pruss, lpruss@dkrpa.com
Lorenz Michel Pruss, mlopez@dkrpa.com
Lorenz Michel Pruss, veronica@dkrpa.com
Noozyara Binta Jahir Eshaba, neshaba@dkrpa.com
Noozyara Binta Jahir Eshaba, mlopez@dkrpa.com
Robert John Borrello, rborrello@russomanno.com
Robert John Borrello, gpalazzotto@russomanno.com
Tracy White, tracy@granerlaw.com
Tracy White, ivy@granerlaw.com
Tracy White, kristin@granerlaw.com

**Physically Served:**

# Exhibit D

Filing # 162580574 E-Filed 12/07/2022 02:43:07 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-010719-CA-01
SECTION: CA44
JUDGE: Alan Fine

**ERIC VILLANUEVA et al**

Plaintiff(s)

vs.

**EMPIRES X CORP et al**

Defendant(s)

_____/

**ORDER ON PLAINTIFFS' MOTION FOR COURT'S DEFAULT**

THIS CAUSE came before the Court on December 7, 2022 upon Plaintiffs' Motion for Court's Default Against Defendant, Flavio M. Goncalves (the "Motion"). Having reviewed the Motion, the case file and the pleadings, and otherwise being fully advised in the premises, it is hereby ORDERED that:

1. The Motion is GRANTED.

2. A Court's default is entered in this action against Defendant, Flavio M. Goncalves, for his failure to serve any papers as required by law or otherwise defend pursuant to Fla. R. Civ. P. 1.500(b).

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 7th day of December, 2022.

2022-010719-CA-01 12-07-2022 2:28 PM
Hon. Alan Fine

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Adam Moskowitz, adam@moskowitz-law.com
Adam Moskowitz, dione@moskowitz-law.com
Adam Moskowitz, service@moskowitz-law.com
Barbara C. Lewis, barbara@moskowitz-law.com
Barbara C. Lewis, dione@moskowitz-law.com
Barbara C. Lewis, service@moskowitz-law.com
Darci Cohen, darci@markmigdal.com
Darci Cohen, eservice@markmigdal.com
Darci Cohen, darci@markmigdal.com
David Anthony Nunez, david@nunez-law.com
David Anthony Nunez, secretary@nunez-law.com
Herman J Russomanno, hrussomanno@russomanno.com
Herman J Russomanno, gpalazzotto@russomanno.com
Herman J Russomanno III, herman2@russomanno.com
Howard M Bushman, howard@moskowitz-law.com
Howard M Bushman, dione@moskowitz-law.com
JOSE M FERRER, jose@markmigdal.com
JOSE M FERRER, eservice@markmigdal.com
John (Jack) Scarola, jsx@searcylaw.com
John (Jack) Scarola, mmccann@searcylaw.com
John Scarola, _scarolateam@searcylaw.com
John Scarola, mmccann@searcylaw.com
John Scarola, _scarolateam@searcylaw.com
Joseph Martin Kaye Esq., joseph@moskowitz-law.com
Joseph Martin Kaye Esq., rejane@moskowitz-law.com
Joseph Martin Kaye Esq., dione@moskowitz-law.com
Lorenz Michel Pruss, lpruss@dkrpa.com
Lorenz Michel Pruss, mlopez@dkrpa.com
Lorenz Michel Pruss, veronica@dkrpa.com
Noozyara Binta Jahir Eshaba, neshaba@dkrpa.com
Noozyara Binta Jahir Eshaba, mlopez@dkrpa.com
Robert John Borrello, rborrello@russomanno.com
Robert John Borrello, gpalazzotto@russomanno.com
Tracy White, tracy@granerlaw.com
Tracy White, ivy@granerlaw.com
Tracy White, kristin@granerlaw.com

**Physically Served:**