United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Francisco Gonzalez and others, Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 23-20356-Civ-Scola ) ) |
| Andrew C. Porter, and others, Defendants. | ) ) ) |

**Order Granting Motion to Dismiss**

This matter is before the Court on the motion to dismiss by Defendants Andrew C. Porter and Salvatore Prescott Porter & Porter, PLLC (collectively, the "Attorney Defendants"). (Mot. to Dismiss, ECF No. 13.) The Plaintiffs responded (ECF No. 23), and the Attorney Defendants timely replied (ECF No. 28.) Having reviewed the briefing, the record, and the relevant legal authorities, the Court **grants** the Attorney Defendants' motion to dismiss and **dismisses** the Plaintiffs' claims against Defendants Porter and Salvatore Prescott Porter & Porter. (**ECF No. 13**.) Further, upon an independent review of the record, the Court **dismisses** the Plaintiffs' claims against Defendants Flavio Mendes Goncalves and Emerson Sousa Pires, consistent with the terms of the Court's order on default judgment procedure. (Order on Def. J. Proc., ECF No. 17.)

1. **Background**

The Plaintiffs, Francisco Gonzalez and Eric Villanueva, brought this purported class action lawsuit in state court seeking to recoup their investments in a cryptocurrency Ponzi scheme, a multi-entity investment group known as EmpiresX. (Compl. at 1-2, ECF No. 1-1.) Previously, the Florida state court had entered defaults against Defendants Goncalves and Pires, two of the scheme's principals, and separately had approved a settlement agreement with Mr. Joshua Nicholas, the scheme's third principal. (*Id.*) While Defendants Goncalves and Pires have allegedly fled the country (to Brazil and Dubai), Mr. Nicholas has been "sentenced to years in federal prison for his involvement in the Ponzi scheme." (*Id.* at 1.) The Plaintiffs now bring suit against the Attorney Defendants in addition to Defendants Goncalves and Pires for what the Plaintiffs allege is the Attorney Defendants' role in facilitating the cover-up of the Ponzi scheme. (*Id.* at 1-3.)

The Plaintiffs' allegations against the Attorney Defendants are relatively simple. Defendant Porter and his firm, Salvatore Prescott Porter & Porter, PLLC, were retained to represent Mr. Nicholas in response to a subpoena from the Securities and Exchange Commission ("SEC") seeking information about the

cryptocurrency investments making up the Ponzi scheme. (*Id.* at 2.) After the Attorney Defendants were retained, they (through Mr. Porter) advised Mr. Nicholas—their client—that it was in his best interests to exercise his Fifth Amendment right against self-incrimination in response to the SEC's subpoena. (*Id.*) This advice, the Plaintiff assert, constituted efforts by the Attorney Defendants to "actively and intentionally prevent[] Mr. Nicholas" from revealing information about Defendants' Goncalves and Pires's whereabouts to the authorities. (*Id.* at 2-3.)

More specifically, the Plaintiffs allege that Mr. Nicholas originally intended to comply with the SEC subpoena and reveal details of the scheme to "minimize his criminal exposure." (*Id.* ¶ 37.) Before Defendants Goncalves and Pires fled the United States, however, they paid the Attorney Defendants to represent Mr. Nicholas in responding to the subpoena. (*Id.* ¶ 36.) After commencing representation, Defendant Porter allegedly advised Mr. Nicholas by, "contrary to his client's wishes and desires," opting "instead to protect his benefactors by instructing Nicholas to invoke the Fifth Amended [sic] right against self-incrimination." (*Id.* ¶ 38.) This, the Plaintiffs claim, "affirmatively assist[ed], help[ed] to conceal, and otherwise facilitat[ed] Pires's and Goncalves's crimes." (*Id.*) The Plaintiffs also support their allegations with an affidavit from Mr. Nichols, in which he asserts that Defendant Porter advised him to "invoke [his] Fifth Amendment right against self-incrimination," although Mr. Nicholas had told Defendant Porter that he desired to share information with the SEC. (Compl. Ex. A, Aff. of J. Nicholas dated Dec. 21, 2022, ¶¶ 6-7.) Ultimately, Mr. Nicholas affirms that he chose to follow Mr. Porter's advice, and he did assert his Fifth Amendment rights. (*Id.* ¶ 10.)

Based on Mr. Porter's legal advice to his client, the Plaintiffs bring three counts against the Attorney Defendants: a claim for aiding and abetting conversion (Count I), a claim for aiding and abetting breaches of fiduciary duty (Count II), and a count for civil conspiracy (Count III). (*Id.* ¶¶ 57-71.) The Plaintiffs also assert Count III, the civil conspiracy claim, against Defendants Goncalves and Pires. (*Id.* ¶¶ 67-71.)

The Attorney Defendants move to dismiss all three counts against them based on the litigation privilege, which they assert is an absolute bar to the case against them, and based on the Plaintiffs' failure to sufficiently state claims upon which relief may be granted both because their claims are implausible and because their claims are not sufficiently supported by factual pleadings. (Mot. to Dismiss at 2-3.) In response, the Plaintiffs argue that the litigation privilege does not apply to the allegations in the complaint and that the complaint sufficiently pleads its claims for relief. (Resp. at 2-3.)

Separately, the Court has previously instructed the Plaintiffs on its procedures for obtaining a default judgment against Defendants Goncalves and

Pires, against whom Clerk's defaults have been entered. (Clerk's Entry of Default, ECF No. 12; Order on Default J. Proc., ECF No. 17.) The order required the Plaintiffs to submit either a motion for default judgment or a notice of joint liability as to Defendants Goncalves and Pires no later than March 14, 2023. (Order on Def. J. Proc. at 1.) The Plaintiffs, however, have never submitted either a motion or notice, as required.

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Regardless of a plaintiff's allegations, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### 3. Analysis

The Court finds that the Plaintiffs' claims against the Attorney Defendants are barred by Florida's litigation privilege.[1] Further, the Court finds that the Plaintiffs' allegations fail to meet the plausibility standard established in *Twombly* and *Iqbal*. Finally, the Court observes that the Plaintiffs have failed to comply with the requirements of the Court's order on default judgment procedure with regards to Defendants Gonzalez and Villanueva.

---

[1] The Court applies Florida substantive law, including Florida's litigation privilege, over the state-law claims in this proceeding. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1275 (11th Cir. 2004) ("Florida's litigation privilege applies to the state-law claims adjudicated in federal court.").

### A. The Plaintiffs' Claims Against the Attorney Defendants Are Barred by Florida's Litigation Privilege

Florida courts have long provided absolute immunity to attorneys for any act that occurs during the course of a judicial proceeding. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994).[2] This privilege extends to any allegedly tortious behavior. *Id.* ("[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding."). The reason behind this rule, the Florida Supreme Court has said, is to ensure that the "participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Id.* And the Florida Supreme Court has repeatedly emphasized that this protection applies to **any** alleged misconduct "occurring during a judicial proceeding." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (quoting *Levin*, 639 So. 2d at 608). Unsurprisingly, then, this rule extends beyond the four walls of the courtroom, and is not limited to acts during trial or even just pre-trial hearings. Rather, the absolute privilege is applied based on whether the alleged misconduct occurred during the course of some "formal" judicial proceeding—including the "formal discovery process." *DelMonico v. Traynor*, 116 So. 3d 1205, 1218 (Fla. 2013).[3]

The Plaintiffs present two arguments against the application of Florida's absolute privilege. First, citing a Third District Court of Appeal case, they assert that the privilege is limited to "communicative" acts of an attorney, such as courtroom speech and advocacy—not the "noncommunicative" act of advising a client that it would be in the client's best interests to assert Fifth Amendment rights. (Resp. at 8 (citing *Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 525 (Fla. 3d DCA 2017).) Second, the Plaintiffs argue that, if any privilege should apply, it is a qualified privilege, not an absolute one. (*Id.* at 9.) The Court disagrees with both positions.

The Florida Supreme Court has never established a distinction between "communicative" and "noncommunicative" acts and, even if it had, an attorney's

---

[2] The privilege was originally recognized by the Florida Supreme Court in 1907. *Myers v. Hodges*, 44 So. 357 (1907). In *Myers*, the Florida Supreme Court held that allegedly defamatory statements made during a judicial proceeding were entitled to immunity, so long as the statements were relevant to the proceeding. *Id.* at 361-62.

[3] When attorneys are involved in "informal," out-of-court activities that nonetheless relate to some anticipated judicial process, then a qualified immunity is instead applied to their actions. *Id.* at 1219. Only if an attorney's actions are not connected in any way with a judicial proceeding are they subject to no privilege. *Id.*

communicating with his client that the client would be best served by remaining silent in response to government questioning certainly seems to meet the definition of "communicative."[4] *Arko Plumbing*, 230 So. 3d at 525 ("[T]he Florida Supreme Court has not explicitly distinguished between communicative and noncommunicative acts in discussing the litigation privilege."). Even assuming that the distinction the Third District Court of Appeal made in *Arko Plumbing* would be supported by the Florida Supreme Court, however, its rationale would not apply here. The Third District there declined to apply the absolute privilege because the proceeding at issue—an "examination under oath"—was not a part of a formal judicial proceeding and therefore was not subject to civil court sanctions, contempt powers, and disciplinary rules in the same way that, for example, conduct at a deposition would be. *Id.* at 527.

Defendant Porter's advice to Mr. Nicholas—indeed, his entire representation of Mr. Nicholas in response to the SEC's subpoena—was governed by additional rules capable of addressing any potential attorney misconduct. An SEC subpoena is part of a formal investigative process and may be enforced by a court. *See, e.g., S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984) (citing 15 U.S.C. §§ 77v(b), 78u(c)). Lying to the SEC in response to a subpoena—or "conceal[ing], or cover[ing] up by any trick, scheme, or device a material fact"—is a federal crime. 18 U.S.C. § 1001(a). And an attorney's knowing assistance of a client's commission or cover up of a crime is a professional ethical violation in Florida.[5]

The Third District's concern in *Arko Plumbing*—that attorney misconduct during the course of the administration of an "examination under oath" was not subject to some system of enforcement other than the body of tort law—is thus clearly inapplicable here. 230 So. 3d at 527. Therefore, the qualified privilege is not the appropriate privilege to apply in these circumstances. *Id.* The absolute privilege is correctly applied to the Attorney Defendants' conduct as alleged in the complaint. And that privilege bars any civil claim against the Attorney Defendants for their alleged conduct here. *Levin*, 639 So. 2d at 608; *Jackson v. BellSouth Telecomms., Inc.*, 181 F. Supp. 2d 1345, 1364-65 (S.D. Fla. 2001) (Middlebrooks, J.), *aff'd sub nom. Jackson v. BellSouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004) (dismissing tort claims relating to settlement proceedings under Florida's litigation privilege.)

---

[4] Merriam-Webster's Dictionary defines "communicative" to mean the following: "(1) tending to communicate: talkative; (2) of or relating to communication." *Communicative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/communicative.

[5] Florida Rule of Professional Conduct 4-1.6 requires that a lawyer "must reveal confidential information to the extent that the lawyer reasonably believes necessary: (1) to prevent a client from committing a crime."

Finally, the Court must briefly observe the potential harm that the Plaintiffs' desired outcome would wreak on the criminal justice system. The Plaintiffs seek to be able to impose civil penalties on a criminal defense attorney for his provision of advice to his client during a federal investigation. This outcome would place criminal defense attorneys in a position of needing to be constantly on guard against how their advice to their clients could be used against them in subsequent civil proceedings. It would therefore necessarily interfere with the criminal defendant's constitutional right to competent counsel. It would also interfere with the constitutional right to avoid self-incrimination in the face of government questioning. This is precisely the sort of chilling effect that the Florida Supreme Court has sought to avoid in over a century of consistent jurisprudence. *See, e.g., Levin*, 639 So. 2d at 608. The Court will not deviate from that jurisprudence here.

### B. The Plaintiffs' Claims Fail to Push the Plaintiffs' Claims Across the Line from "Conceivable" to "Plausible"

Even if the Plaintiffs' claims against the Attorney Defendants were not barred by Florida's litigation privilege, they fail to state a claim upon which relief could be granted. These claims fail to meet the pleading requirements of Federal Rule of Civil Procedure 8 because the Plaintiffs fail to plead sufficient facts to nudge their claims over the line from conceivable to plausible.[6] *Iqbal*, 556 U.S. at 679.

The Plaintiffs' allegations against the Attorney Defendants center on the following pleaded facts. First, the Plaintiffs allege that Defendants Goncalves and Pires hired the Attorney Defendants to represent Mr. Nicholas in the SEC's investigation of EmpiresX. (Compl. ¶ 36.) In response to the SEC's subpoena, Defendant Porter advised Mr. Nicholas to invoke his Fifth Amendment right against self-incrimination. (*Id.* ¶ 38.) Mr. Nicholas chose to abide by Defendant Porter's legal advice. (*Id.* ¶ 39, Ex. A ¶ 10.) Meanwhile, Defendants Goncalves and Pires fled the United States. (*Id.* ¶ 40.)

From this, the Plaintiffs assert in a conclusory fashion that the Attorney Defendants were "instrumental to the success of Goncalves's and Pires's crimes and directly contributed to the plaintiff's [sic] class damages by enabling Goncalves and Pires to flee with millions of investor funds." (*Id.* ¶ 41.) The Plaintiffs further speculate that, had Mr. Nicholas not followed Defendant Porter's advice and provided information to the SEC, "Goncalves and Pires likely would have been apprehended." (*Id.*)

---

[6] Because the Court finds that the Plaintiffs' allegations against the Attorney Defendants fail to meet Rule 8's requirements, it declines to address the Attorney Defendants' arguments regarding Rule 9(b)'s heightened pleading standard. (Mot. at 11.)

Setting aside the Plaintiffs' conclusory allegations and speculation, the Court is left with allegations of the precise type of parallel conduct that the Supreme Court has repeatedly held to be insufficient to plead a plausible claim for relief. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 679. Instead, as the Supreme Court observed in *Iqbal*, there are "more likely explanations" here, so the Plaintiffs fail to establish a plausible claim for relief against the Attorney Defendants. *Iqbal*, 556 U.S. at 681.

The key problem for the Plaintiffs, which they never address, is that Defendant Porter's legal advice to his client was almost certainly in Mr. Nicholas's best interests. Given the nature of the ongoing fraud at EmpiresX, as the Plaintiffs allege, Mr. Nicholas was probably well-served by his attorney's advice to remain silent rather than incriminate himself. (*See, e.g.,* Compl. ¶¶ 27-34.) And, setting aside the Plaintiffs' conclusory allegations of the Attorney Defendants' advice being "instrumental" or "substantially assist[ing]" Defendants Goncalves and Pires, the Plaintiffs provide no factual allegations demonstrating that the Attorney Defendants conspired to assist those defendants' flight from the United States. Rather, the allegations present a clear picture of an attorney providing normal and unsurprising advice to a client in response to a federal investigation. And, perhaps most crucially, Mr. Nicholas freely **chose** to follow that advice. (Compl. Ex. A ¶ 10.)

For both reasons addressed above, the Court dismisses the Plaintiffs' claims against the Attorney Defendants. Because the litigation privilege applied here is absolute, the dismissal must be with prejudice., 181 F. Supp. 2d at 1365 ("Because Florida's litigation privilege affords these defendants absolute immunity regarding these allegations, these counts are dismissed with prejudice.") (cleaned up).

### C. The Plaintiffs Have Failed to Abide by the Court's Order on Default Judgment Procedure

Finally, the Court dismisses the Plaintiffs' claims against Defendants Goncalves and Pires for failure to comply with the Court's order on default judgment procedure. (Order on Def. J. Proc. at 2.) In that order, the Court required the Plaintiffs to submit either a motion for default judgment or a notice of joint liability as to Defendants Goncalves and Pires no later than March 14, 2023. (Order on Def. J. Proc. at 1.) The Plaintiffs never submitted either the motion or the notice. As the Court cautioned in the order, it now dismisses the Plaintiffs' claims against Defendants Goncalves and Pires without prejudice for failure to comply with the order's requirements. *See Powell v. Siegal*, 447 F. App'x 92, 94 (11th Cir. 2011) ("Rule 16(f) authorizes a court to impose sanctions,

including dismissal under Rule 37(b)(2)(A)(v), if a party fails to obey a pretrial order.").

### 4. Conclusion

For the reasons stated above, the Court **grants** the Attorney Defendants' motion to dismiss. (**ECF No. 13**.) The Court **dismisses** the Plaintiff's claims against Defendants Andrew C. Porter and Salvatore Prescott Porter & Porter, PLLC, **with prejudice**. Further, the Court **dismisses** the Plaintiffs' claims against Defendants Flavio Mendes Goncalves and Emerson Sousa Pires, albeit **without prejudice**. The Clerk is **directed** to **close** this case. All pending motions, if any, are **denied as moot**.

**Done and ordered** in Miami, Florida, on April 12, 2023.

Robert N. Scola, Jr.
United States District Judge